EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Iván A. Ramos Vélez | 2000 TSPR 82 |

Número del Caso: TS-2651

Fecha: 01/junio/2000

Oficina del Procurador General:

        Lcda. Ivonne Casanova Pelosi
        Procuradora General Auxiliar

Abogado del Querellado:

        Por Derecho Propio

Materia:

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Iván A. Ramos Vélez                    TS-2651

PER CURIAM

San Juan, Puerto Rico, a 1 de junio de 2000

I

La Oficina de Inspección de Notarías nos rindió un informe expositivo de que la inspección del Protocolo del notario Iván A. Ramos Vélez correspondiente al año 1989, reflejó deficiencias en las Escrituras de Testamento números 2, 3, 16 y 18.

En efecto, en la Escritura Núm. 2 el notario Ramos Vélez omitió dar fe de conocer al testador, y de su capacidad legal y mental. En ésta, el testador falleció y su herencia fue repartida sin que hubiera planteamiento o ningún inconveniente.

La deficiencia de la escritura Núm. 3 omitió dar fe de conocer al testador. La situación fue atendida por el notario Ramos Vélez satisfaciéndole al testador los gastos de viaje desde el estado de la Florida, para que viniera a Puerto Rico y otorgara aquí un segundo testamento.

Las escrituras núms. 16 y 18 fueron otorgadas por la misma -testadora. En ambas, ésta desheredó a su hija dejando todos sus bienes a su sobrino. Son idénticas, excepto que la primera no fue presentada en tiempo al Registro de Poderes y Testamentos según ordena la ley. La escritura posterior núm. 18 fue un fallido intento de subsanar esa falla. Sin embargo, según indicado ambas escrituras adolecen de un mismo error, a saber, omiten dar fe en cuanto al conocimiento de la testadora por el notario autorizante. Preciso puntualizar, que la escritura núm. 18 fue impugnada por razón de esa omisión, y el Tribunal de Primera Instancia anuló el testamento.

Previo trámites de rigor compareció Ramos Vélez. Admite su conducta negligente. Reconoce que la omisión de dar fe del conocimiento del testador en las escrituras de referencia constituyó un error de su parte, aunque lo cataloga de involuntario, producto de ingenuidad, sin malicia, dolo, fraude, mala fe o motivación de índole alguna. Argumenta que tales omisiones respondieron a que, de alguna manera inexplicable se borró la "dación de fe" de la computadora. Postula que errar es humano, y expresa legítimo arrepentimiento solicitándonos indulgencia, comprensión y benevolencia.

## II

El Art. 634 del Código Civil, 31 L.P.R.A. sec. 2150, impone al notario autorizante la obligación de conocer al testador y de asegurarse que tenga capacidad legal para testar. El Art. 15(e) de la Ley Notarial, 4 L.P.R.A. sec. 2033(e), complementa ese mandato al preceptuar que en la escritura pública se consigne expresamente la fe del notario de que conoce a los otorgantes –personalmente o mediante los mecanismos que provee la ley–. Además, que a su juicio, ellos poseen la capacidad legal necesaria para otorgar dicha escritura. Es pertinente señalar, que el Art. 636 del Código Civil, 31 L.P.R.A. sec. 2152, dispone que será nulo todo testamento en que no se observen esas formalidades de ley.

Reiteramos pues, la doctrina de que el testamento es un acto eminentemente solemne, que requiere se cumplan las formalidades correspondientes a cada tipo de testamento, so pena de nulidad. Estas formalidades no son simples cuestiones de evidencia, sino requisitos sustantivos, de los cuales depende su validez. Rivera Pitre v. Galarza Martínez, 108 D.P.R. 565, 568 (1979); In re: Edgar Méndez Rivera, res. el 24 de octubre de 1996, 141 D.P.R. _____ (1996).

La omisión del notario de dar fe del conocimiento de los testadores de las mencionadas escrituras, no sólo infringe la ley, sino que transgrede los principios éticos que rigen la conducta de los abogados-notarios en nuestra jurisdicción. En In re: Cruz Cruz, 126 D.P.R. 448, 451

(1990), reafirmamos que el mecanismo para lograr correspondencia real y legítima entre persona y firma, es exigiendo la comparecencia y conocimiento por el notario. Es decir, la fe de conocimiento persigue evitar la suplantación de las partes en el otorgamiento. La idea de compareciente va inexorablemente unida al hecho material de la presencia física ante notario. Esa comparecencia, hemos sostenido, implica su narración en la forma documental (instrumento) mediante la dación de fe de conocimiento de identidad. Véase, además, Sucn. Santos v. Registrador, 108 D.P.R. 831, 837 (1979); In re: Olmo Olmo, 113 D.P.R. 441, 451-452 (1982).

Con respecto a nuestra Ley Notarial, no cabe duda que ésta considera medular la comparecencia personal y el conocimiento de los firmantes. Cintrón Ramos v. Registradora, res. el 13 de noviembre de 1997, 144 D.P.R. _____ (1997). Sin la fe del conocimiento, sobran los notarios, por lo que su inobservancia siempre ha constituido una falta seria sujeta a estrictas medidas disciplinarias. In re: Cruz Cruz, supra, a la pág. 454; In re: Echevarría González, 116 D.P.R. 423, 424 (1985); In re: Félix, 104 D.P.R. 379 (1975). Parecería innecesario tener que reiterar, una vez más, la importancia suprema e ineludible de que los notarios observen escrupulosa y cuidadosamente el mandato de ley sobre comparecencia y conocimiento de los otorgantes.

Una vez el notario se aparta de cumplir con las obligaciones y deberes que le impone la ley y el

ordenamiento ético, incurre en conducta que acarrea una sanción disciplinaria, ya que lesiona la confianza y la función pública en él investida. In re: Juan Capestany Rodríguez, res. el 30 de junio de 1999, 99 TSPR 109. Hemos catalogado las faltas como graves cuando, entre otras cosas, las mismas afectan la eficacia del documento mismo. In re: Roberto Madera Acosta, res. el 4 de febrero de 1998, 98 TSPR 13.

### III

Según indicado, el notario Ramos Vélez admite su negligencia. Aduce que se debió exclusivamente a "un error en su computadora" y no a conducta intencional o motivación dolosa. Ha tratado de corregir en la medida de lo posible sus errores, incluso está en disposición de resarcir económicamente a quienes resulten afectados por su actuación. Apreciamos el tenor sincero de su comparecencia, pero intereses públicos de mayor valía nos impiden limitar la sanción a una simple amonestación.

No es la primera vez que tenemos que disciplinar al Lcdo. Ramos Vélez. En In re: Ramos, 104 D.P.R. 568 (1976), le impusimos una multa y lo suspendimos de la notaría un año por haber faltado a la fe notarial.

Considerando todas las circunstancias anteriormente reseñadas, se decreta su suspensión del ejercicio de la notaría por noventa (90) días, y además se le impone una multa total de dos mil ($2,000.00) dólares, a razón de quinientos ($500.00) dólares en **cada uno** de los cuatro casos. La misma será satisfecha mediante cheque

certificado a nombre de la Secretaria de Hacienda, a ser depositada en la Secretaría de este Tribunal dentro del término de treinta (30) días.

Se ordena al Alguacil General notifique personalmente al Lcdo. Ramos Vélez y se incaute de su obra notarial, incluso su sello notarial, y la remita a la Oficina de Inspección de Notarías para la inspección e informe correspondiente.

Se dictará la correspondiente sentencia.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

          Iván A. Ramos Vélez                    TS-2651

                            SENTENCIA

San Juan, Puerto Rico, a 1 de junio de 2000

        Por los fundamentos expuestos en la Opinión <u>Per Curiam</u> que antecede, la cual se hace formar parte integrante de la presente, se dicta sentencia y se suspende al Lcdo. Iván A. Ramos Vélez del ejercicio de la notaría por un término de noventa (90) días y, además, se le impone una multa total de dos mil ($2,000.00) dólares en favor de la Secretaria de Hacienda, a ser depositada en la Secretaría de este Tribunal dentro del término de treinta (30) días, a partir de la fecha de notificación de esta Resolución.

        Se ordena al Alguacil General notifique personalmente al Lcdo. Ramos Vélez y se incaute de su obra notarial, incluso su sello notarial y la remita a la Oficina de Inspección de Notarías para la inspección e informe correspondiente.

        Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señores Rebollo López y Hernández Denton disienten y limitarían la sanción disciplinaria a las multas económicas. El Juez Asociado señor Fuster Berlingeri no intervino.

                              Isabel Llompart Zeno
                               Secretaria del Tribunal Supremo